Filed 6/21/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>IVAN MORALES,<br><br>        Defendant and Appellant. | A166731<br>(Sonoma County Super. Ct.<br>No. SCR-682933-1) |

In 2018, a jury found defendant Ivan Morales guilty of robbery and attempted premeditated murder, among other offenses, and found he personally and intentionally discharged a firearm causing great bodily injury in the commission of the robbery and attempted premeditated murder.  In 2020, we affirmed the judgment.  (*People v. Morales* (Aug. 25, 2020, A154263) 2020 WL 4999934 [nonpub. opn.] (*Morales*).)

In 2022, Morales filed a petition to vacate the attempted murder conviction and for resentencing under former Penal Code section 1170.95 (now section 1172.6).  The trial court found Morales failed to make a prima facie claim for relief and denied the petition without issuing an order to show cause.  Morales appeals from the order denying his petition.

We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Crimes*

On the afternoon of July 12, 2016, Morales and his longtime friend Sergey Gutsu robbed an armored truck stopped at a bank in Windsor, California. Glenn,[1] an employee of the armored truck company, had just exited the truck and was carrying a bag containing $30,000 in paper currency when Morales shot him multiple times with an AK-47 semi-automatic rifle. Gutsu grabbed the bag of money, and the two of them drove away. Glenn sustained three rifle-shot wounds and suffered life-threatening injuries, but he survived. (*Morales*, *supra,* 2020 WL 4999934, at \*1–2 and fns. 4 and 5.)

Later the same afternoon, Calistoga police officer Luis Paniagua attempted a traffic stop of a blue Suburban that matched the description of a vehicle reported to have been involved in a robbery. Gutsu, who was driving the Suburban, emerged from the vehicle and began shooting at the officer with a semi-automatic pistol. Morales, who was also in the Suburban, ran away. Officer Paniagua arrested Gutsu at the scene of the traffic stop, and Morales was apprehended a few hours later. An AK-47 was found in the Suburban; Morales's wife was its registered owner. (*Morales*, *supra*, 2020 WL 4999934, at \*1–2, fn. 2.)

*The Criminal Trial*

Morales was charged with robbery (Pen. Code,[2] § 211), attempted premeditated murder of Glenn (§§ 664, 187, subd. (a)), assault with an assault weapon (§ 245, subd. (a)(3), attempted premeditated murder of a peace officer (§§ 664, 187, subd. (a)), assault on a peace officer with a semi-

---

[1] At trial, Glenn testified using his first name only.

[2] Further undesignated statutory references are to the Penal Code.

2

automatic firearm (§ 245, subd. (d)(2)), shooting at an occupied motor vehicle (§ 246), and driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)). As to the charges of attempted premeditated murder of Glenn and robbery, it was alleged that Morales personally discharged a firearm and proximately caused great bodily injury in the commission of the offense. (§ 12022.53, subd. (d) (§ 12022.53(d)).)

Morales and Gutsu were tried together with separate juries, but Gutsu pleaded no contest to all charges before his case went to his jury. (*Morales*, *supra*, 2020 WL 4999934, at *3 and fn. 7.)

<u>The Prosecution's Theories of Liability</u>

At trial, the prosecution's theory was that Morales and Gutsu robbed Glenn together, Morales shot Glenn in Windsor,[3] Gutsu fired at Officer Paniagua in Calistoga, each of the shootings was an attempted premeditated murder, and Morales was liable for the acts committed by Gutsu under the natural and probable consequences doctrine because, as the prosecutor told the jury, taking part in the robbery "ties Defendant Morales to all other crimes that were committed during the commission of that robbery."

In his closing argument, the prosecutor described how Morales and Gutsu acted together in committing the robbery, emphasizing that Morales was the shooter at the robbery in Windsor: "[W]e have Defendant *Morales shooting the guard*, sticking up the guard; we have Defendant Gutsu running

---

[3] Glenn described his shooter as wearing a ski mask, so he was unable to identify Morales as the shooter. In contrast, Officer Paniagua identified Gutsu as the person who shot at him and, in fact, he arrested Gustu immediately after this shooting.

3

and grabbing the bag [of money]. And so they're both perpetrators. They're each aiding and abetting each other" in the robbery. (Italics added.)[4]

As to the charge of attempted premeditated murder of Glenn, the prosecutor argued Morales was the direct perpetrator as his conduct and mental state met the elements of the offense. The prosecutor said, "[L]et's look at first what's just required to prove attempted murder: That the defendant took at least one ineffective step toward killing another person. Well, that's established by pulling the trigger of the gun and shooting. But then the next part. The defendant intended to kill that person. . . . [H]ow do we know that *this defendant, Defendant Morales, intended to kill Glenn?*" (Italics added.)

The prosecutor argued Morales's intent to kill could be inferred based on Morales's conduct before the shooting and his statements to the police after the shooting.[5] He also relied on the manner of the shooting as circumstantial evidence of Morales's intent.[6] The prosecutor next argued the

---

[4] The prosecutor again emphasized that Morales was the one who shot Glenn when he discussed the firearm enhancement associated with the robbery charge: "Morales personally used a firearm during the commission of that robbery, and it requires that the defendant personally and intentionally discharged a firearm. So he shot it, and that . . . act of shooting it and hitting Glenn caused great bodily injury."

[5] The prosecutor identified (1) Morales's statement to the police after the robbery about a "discussion that he had with Sergey Gutsu prior to the robbery, about circumstances that would require killing the guard," (2) Morales's indication to the police that he believed Glenn was dead after the shooting, (3) text messages Morales sent to Gutsu before the current offenses (in one text to Gutsu, he wrote, "But now the AK is upset. It does not get to taste blood."), and (4) Morales's internet searches before the current offenses for information about the damage inflicted by an AK-47.

[6] The prosecutor told the jury that Morales pulled the trigger of his assault rifle and then decided "to pull that trigger again to fire the second

4

attempted murder was deliberate and premeditated, citing the same circumstances he relied on to show Morales's intent to kill.

As to the charge of attempted premeditated murder of Officer Paniagua, the prosecutor told the jury, "we look at the same type of evidence, but now in relation to Sergey Gutsu." Thus, the prosecutor argued Gutsu was the direct perpetrator of the shooting in Calistoga, and Morales was liable for Gutsu's crimes (assault on a peace officer, shooting an occupied vehicle, driving without the owner's consent, as well as attempted premeditated murder) because those crimes were a natural and probable consequence of the robbery in Windsor.

Acknowledging that Morales disputed that he shot Glenn, the prosecutor also explained to the jury that Morales "can still be guilty of the attempted murder of Glenn, even if Defendant Gutsu shot Glenn." In other words, the prosecutor suggested—as an alternative theory of liability—that, even if the jury could not agree Morales was the shooter in Windsor, he could still be guilty of the crimes related to the shooting of Glenn under the natural and probable consequences theory. He continued, "But as we will review in this case, the evidence is overwhelmingly clear that this defendant, Defendant Morales, is the defendant that shot Glenn."

---

shot. And when he fired that shot, and he literally, literally ripped Glenn's body apart, what did he do? He kept that rifle fixed on him. He pulled that trigger. He ripped his body apart again. He pulled that trigger, and he ripped his body apart again. And he pulled that trigger five separate, distinct times. Five times, he made the conscious, deliberate decision to pull that trigger." The prosecutor observed that Morales only stopped shooting because his rifle jammed. (Officer Paniagua testified that the AK-47 he found in the Suburban was jammed and therefore was inoperable.)

5

<u>The Defense</u>

Morales did not dispute that he was at the crime scenes in Windsor and Calistoga. But defense counsel argued Morales participated in the robbery under duress and it was Gutsu who shot Glenn.

<u>Jury Instructions</u>

The trial court instructed the jury with CALCRIM Nos. 400 (aiding and abetting: general principles), 401 (aiding and abetting: intended crimes), 402 (natural and probable consequences doctrine), 416 (evidence of uncharged conspiracy), 417 (liability for coconspirators' acts), 600 (attempted murder), 601 (attempted murder: deliberation and premeditation), and 3150 (personally used firearm: intentional discharge and discharge causing injury or death), among others.

For CALCRIM No. 402 on the natural and probable consequences doctrine, the jury was instructed: "The defendant is charged in Count III with Robbery, and in Count I with Attempted Premeditated Murder of Glenn, and Count II with Attempted Premeditated Murder of Peace Officer Luis Paniagua. Count V with Assault on a Peace Officer with a Semi-Automatic Firearm, Count VI with Willful Unlawful and Malicious Discharge of a Firearm at an Occupied Motor Vehicle, Count VII with Assault by an Assault Weapon on Glenn.

"You must first decide whether the defendant is guilty of Robbery. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of Attempted Premeditated Murder of Glenn (Count I), Attempted Premeditated Murder of Officer Luis Paniagua (Count II)[,] Assault on a Peace Officer with a Semi-Automatic Firearm (Count V), Willful Unlawful and Malicious Discharge of a Firearm at an Occupied Motor Vehicle (Count VI), Assault by Assault Weapon on Glenn (Count VII).

6

"Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

"To prove that the defendant is guilty of Attempted Premeditated Murder of Glenn (Count I), Attempted Premeditated Murder of Officer Luis Paniagua (Count II), Assault on a Peace Officer with a Semi-Automatic Firearm (Count V), Willful Unlawful and Malicious Discharge of a Firearm at an Occupied Motor Vehicle (Count VI), Assault by Assault Weapon on Glenn (Count VII), the People must prove that:

"1.     The defendant is guilty of robbery;

"2.     During the commission of the robbery *a co-participant in that robbery committed the crime of Attempted Premeditated Murder of Glenn* (Count I), Attempted Premeditated Murder of Officer Luis Paniagua (Count II), Assault on a Peace Officer with a Semi-Automatic Firearm (Count V), Willful Unlawful and Malicious Discharge of a Firearm at an Occupied Motor Vehicle (Count VI), Assault by Assault Weapon on Glenn (Count VII);

"AND

"3.     Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of Attempted Premeditated Murder of Glenn (Count I), Attempted Premeditated Murder of Officer Luis Paniagua (Count II), Assault on a Peace Officer with a Semi-Automatic Firearm (Count V), Willful Unlawful and Malicious Discharge of a Firearm at an Occupied Motor Vehicle (Count VI), Assault by an Assault Weapon on Glenn (Count VII) was a natural and probable consequence of the commission of the robbery.

"A co-participant in a crime is the perpetrator or anyone who aided and abetted the perpetrator.  It does not include a victim or innocent bystander.

7

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

"To decide whether [the] crime of robbery was committed, please refer to the separate instructions that I will give on that crime[]." (Italics added and original italics deleted.)

Similarly, with CALCRIM No. 417 on liability for coconspirators' acts, the trial court instructed the jury that a "member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan."[7] (Underlining deleted.)

<u>Verdict</u>

In 2018, the jury found Morales guilty of attempted premeditated murder of Glenn, robbery, assault with an assault weapon, assault on a peace officer (a lesser included offense of assault on a peace officer with a semi-automatic firearm), and driving a vehicle without the owner's consent. The jury found true the allegations under section 12022.53(d) that Morales personally discharged a firearm and caused great bodily injury in the commission of the robbery and attempted premeditated murder of Glenn. (*Morales*, *supra*, 2020 WL 4999934, at *1.) The jury did not find Morales

---

[7] The jury was instructed as part of CALCRIM No. 416 (on evidence of an uncharged conspiracy) that the prosecution contended Morales conspired with Gutsu to commit robbery.

8

guilty of attempted murder of Officer Paniagua or shooting an occupied vehicle.

*Current Proceedings*

In January 2022, Morales petitioned for resentencing under former section 1170.95 (now section 1172.6).[8] The prosecution filed an opposition arguing Morales was not entitled to relief because the jury's verdict established that Morales was "the actual attempted killer." Morales filed a reply arguing he made a prima facie case because he was charged with attempted murder of Glenn under the natural and probable consequences doctrine and the jury's finding that he intentionally discharged a firearm and proximately caused great bodily injury under section 12022.53(d) did not establish as a matter of law that he acted with malice aforethought.

In November 2022, the trial court denied the petition for resentencing after "find[ing] that the record of conviction conclusively demonstrates that the jury in this case convicted Morales of attempted murder based upon a valid *direct perpetrator* theory of attempted murder, and not upon any [invalid] natural and probable consequence theory."

The trial court explained that the prosecution's "entire theory for the attempted murder was that the person who shot Glenn *was the direct perpetrator* who had the intent to kill and took a direct but ineffective step toward killing Glenn." "A disputed issue at trial was whether Morales or codefendant Gutsu was the shooter of victim Glenn," and so the prosecution "offered the natural and probable consequence theory to the jury . . . as a[n

---

[8] Former section 1170.95 was renumbered 1172.6 without substantive change effective June 30, 2022. (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).) In this opinion, we will cite to section 1172.6, the current version of the resentencing statute at issue.

9

alternative] basis for Morales'[s] liability for attempted murder *only if* the jury determined that Gutsu (and not Morales) [was the shooter]." But, the court reasoned, "once the jury found that Morales was the shooter [which we know it did because it found he personally discharged a firearm and caused great bodily injury under section 12022.53(d)], the natural and probable consequence theory of liability for Morales became inapplicable. It would only have been applicable if the jury had found that Gutsu (not Morales) was the shooter."

## DISCUSSION

A. *Elimination of Murder and Attempted Murder Liability Based on the Natural and Probable Consequences Doctrine and Retroactive Relief Under Section 1172.6*

In 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, [and] was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), quoting Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, Senate Bill No. 1437 amended sections 188 (defining the "malice" required for murder) and 189 (defining first and second degree murder) to eliminate murder liability based on the natural and probable consequences doctrine and to significantly narrow the scope of the felony-murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 440 (*Curiel*); *Strong, supra,* 13 Cal.5th at p. 707, fn. 1; *Lewis, supra,* 11 Cal.5th at p. 959.)

Senate Bill 1437 also created a procedure (formerly at section 1170.95, now at section 1172.6) for defendants convicted of murder under prior law to seek retroactive relief if they "could not be convicted under the law as

10

amended." (*Lewis*, *supra*, 11 Cal.5th at p. 957; *Curiel*, *supra*, 15 Cal.5th at p.440.)

Effective January 1, 2022, Senate Bill No. 775, (2021–2022 Reg. Sess.) "extended [retroactive] relief to defendants convicted of *attempted* murder based on the natural and probable consequences doctrine." (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, ___ [320 Cal.Rptr.3d 631, 634], italics added; *People v. Coley* (2022) 77 Cal.App.5th 539, 544.)

As relevant to this appeal, section 1172.6, subdivision (a) (§ 1172.6(a)), now provides that a person convicted of attempted murder under the natural and probable consequences doctrine "may file a petition with the court that sentenced the petitioner to have the . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when . . . the following [three] conditions apply:  [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine.  [¶] (2) The petitioner was convicted of . . . attempted murder . . . following a trial . . . .  [¶] (3) The petitioner could not presently be convicted of . . .  attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.]  If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citations.]  If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to

11

show cause.' " (*Strong, supra,* 13 Cal.5th at p. 708, quoting § 1172.6, subd. (c).)

While the trial court generally should not reject a petitioner's factual allegations at the prima facie stage, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

Following the issuance of an order to show cause, if the prosecution does not stipulate that the petitioner is eligible for resentencing, "the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)" (*Strong, supra,* 13 Cal.5th at p. 709.)

B.    *The Prima Facie Showing*

Here, the trial court denied Morales's petition on the ground he failed to meet the third condition of a prima case for relief—that he could not currently be convicted of attempted murder because of changes to the murder statutes effected by Senate Bill 1437 (§ 1172(a)(3)).[9]

---

[9] There is no dispute that Morales met the first two conditions of a prima facie case.  He was charged with attempted murder and the prosecution was allowed to proceed under a theory of attempted murder under the natural and probable consequences doctrine (§ 1172(a)(1)) and he was convicted of attempted murder following a trial (§ 1172(a)(2)).

12

As we have described, at the prima facie stage, the trial court must accept each allegation made by the petitioner "unless the allegation is refuted by the record." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

The allegation that "[t]he petitioner could not presently be convicted of . . . attempted murder because of changes to . . . Section 188 or 189 made effective January 1, 2019" (§ 1172(a)(3)) is refuted when "the record conclusively establishes every element of the offense" (*Curiel*, *supra*, 15 Cal.5th at p. 463). This means that if the record of conviction in this case conclusively establishes the jury found facts sufficient to support Morales's conviction of attempted murder under current law, he has not made his prima facie case. (See *id.* at p. 465 [explaining the petitioner's allegation under section 1172.6(a)(3) would be refuted only if the jury's verdicts reflected all "the factual findings necessary to support a murder conviction under current law"]; *People v. Harden* (2022) 81 Cal.App.5th 45, 48, 56, 59 (*Harden*) [where the jury was instructed on felony murder, but "the record of conviction irrefutably establishes as a matter of law that the jury determined [the petitioner] was the actual killer," the trial court correctly denied her petition at the prima facie stage].)

We independently review the trial court's determination that Morales failed to make a prima facie showing. (*Harden*, *supra*, 81 Cal.App.5th at p. 52.)

C.  *The Trial Court Correctly Determined that the Jury Found Morales Guilty of Attempted Murder Under a Valid Theory Under Current Law*

"[W]e may look to the jury's verdicts*, and the factual findings they necessarily reflect*, to determine whether the record of conviction refutes the factual allegations in [Morales]'s petition." (*Curiel*, *supra*, 15 Cal.5th at p. 465, italics added.)

13

The evidence in this case showed that two individuals robbed Glenn of a bag of money in front of a bank in Windsor and that one of the robbers shot Glenn multiple times with an AK-47 semi-automatic rifle causing Glenn life-threatening injuries during the robbery. Based on this incident, the prosecution charged Morales with robbery and attempted premeditated murder of Glenn.

The jury convicted Morales of robbery, which means it found, as a factual matter, Morales was one of the two individuals who robbed Glenn. The jury also found Morales guilty of attempted premeditated murder of Glenn. Because the jury was instructed on the natural and probable consequences doctrine, this finding *by itself* does not establish that the jury found Morales was the direct perpetrator of an attempted premeditated murder. Under the instructions given, the guilty verdict establishes that the jury determined, first, that an attempted premeditated murder of Glenn occurred and, second, that the crime was committed by either Morales or his coparticipant in the robbery, Gutsu.

But these guilty verdicts were not the jury's only findings regarding the robbery and attempted premeditated murder of Glenn. The jury also found Morales guilty of assault with an assault weapon and found true the allegation under section 12022.53(d) that Morales personally and intentionally discharged a firearm and caused great bodily injury in the commission of the robbery and attempted premeditated murder of Glenn. This means the jury made the factual finding that Morales was the robber who shot Glenn multiple times with an AK-47 semi-automatic rifle.

Considered together, do these jury verdicts "reflect all of the factual findings necessary to support a[n attempted] murder conviction under

14

current law" so that Morales is ineligible for relief under section 1172.6? (*Curiel, supra*, 15 Cal.5th at p. 465.) We believe they do.

We reach this conclusion because the prosecution's *only* factual basis for the attempted premeditated murder charge was the shooting of Glenn with an AK-47 semi-automatic rifle. No other act was alleged or shown to have been committed by either robber that met the element of a direct but ineffectual act toward killing Glenn, which element the jury was required to find in order to convict Morales of attempted murder. (See *People v. Canizales* (2019) 7 Cal.5th 591, 602 ["To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' "]; CALCRIM No. 600.) Consequently, the jury's finding that an attempted murder was committed means the jury must have found, as a factual matter, that one of the robbers, with intent to kill, took a direct but ineffectual act toward killing Glenn *by shooting him with an AK-47 semi-automatic rifle*.[10] And, by finding Morales guilty of assault with an assault weapon and finding the discharge allegation under section 12022.53(d) true, the jury found Morales was the robber who shot Glenn with the AK-47 semi-automatic rifle and, therefore, he was the direct perpetrator of the attempted premeditated murder.

Thus, we are confident the jury necessarily made all the factual findings required to establish Morales is guilty of attempted murder under the still-valid theory that he, with the requisite mental state of intent to kill, committed a direct but ineffectual act toward killing Glenn. (See *Curiel*,

---

[10] And the jury's finding of premeditation means it found the attempted murder was done willfully and with deliberation and premeditation. (See § 664, subd. (a); CALCRIM No. 601.)

15

*supra*, 15 Cal.5th at p. 467 [to find an element of murder or attempted murder satisfied at the prima facie stage, "we must be confident the jury *necessarily* found" that element]; *Harden*, *supra*, 81 Cal.App.5th at p. 55 ["when viewing the verdicts as a whole, the jury's true finding that [the petitioner] personally inflicted great bodily injury necessarily means it determined she strangled [the victim]"; thus, the jury necessarily found the petitioner was guilty of murder under the still-valid theory that she was the actual killer].)

Morales argues the trial court erred in denying his petition at the prima facie stage because "the jury could have found that [he] aided and abetted an offense, the natural and probable consequence of which was attempted first-degree murder committed by his codefendant" Gutsu. But, if the jury had found Morales guilty of attempted premeditated murder under the natural and probable consequences theory, it would not have found true the allegation that he personally discharged a firearm causing great bodily injury. We agree with the trial court's reasoning: "once the jury found that Morales was the shooter, the natural and probable consequence theory of liability for Morales became inapplicable. It would only have been applicable if the jury had found that Gutsu (not Morales) was the shooter."

The cases Morales relies on are inapposite. In *People v. Whitson* (2022) 79 Cal.App.5th 22, 25–26, the petitioner was convicted of attempted murder based on a drive-by shooting in which he was the driver and his confederate was the shooter. The Court of Appeal held the petitioner made a prima facie case for relief under Senate Bill 1437 because, under the instructions given, it was possible the jury convicted the petitioner based on a finding that his confederate harbored intent to kill. (*Id*. at p. 33.) Here, in contrast, the jury's verdicts, considered together, establish the jury found Morales harbored an

16

intent to kill, as the jury found, first, that the person who shot Glenn with an AK-47 committed an attempted premeditated murder and, therefore, necessarily had intent to kill and, second, Morales was that shooter.

In *People v. Pacheco* (2022) 76 Cal.App.5th 118, 122, the Court of Appeal held that a jury finding of a gang special circumstance did not, by itself, preclude relief under Senate Bill 1437 because the finding established only the requisite mental state of intent to kill but did not establish the act required for direct aiding and abetting of murder. Thus, "the jury's true finding on the gang special circumstance d[id] not conclusively establish [the petitioner] could be found guilty of murder under current law (that he had the intent to kill, *and* he directly aided and abetted the target crime of murder)." (*Ibid.*) But, in the present case, the jury's verdicts establish that Morales *both* had intent to kill *and* took a direct but ineffective act toward killing Glenn because, again, the jury found the shooting of Glenn was an attempted premeditated murder and Morales was the shooter.

Finally, in *People v. Offley* (2020) 48 Cal.App.5th 588, 598, the Court of Appeal held that the existence of an enhancement under section 12022.53(d), by itself, "does not show that a defendant acted with malice aforethought" and, therefore, does not preclude a petitioner from making a prima facie case for resentencing relief. This holding does not help Morales because the relevance of the section 12022.53(d) firearm discharge finding in this case is not to prove the requisite mental state but to establish that the jury found Morales was the shooter and, therefore, was the direct perpetrator of the attempted premeditated murder. The required mental state was established by the jury's guilty verdict for attempted premeditated murder of Glenn, as the jury found intent to kill, which is express malice (*Curiel, supra*, 15 Cal.5th at p. 461; § 188, subd. (a)(1)).

In sum, the trial court properly denied Morales's section 1172.6 petition at the prima facie stage because the jury verdicts establish all the factual findings necessary to support an attempted murder conviction under current law.

## DISPOSITION

The order denying Morales's petition under section 1172.6 is affirmed.

_____

Miller, J.

WE CONCUR:


_____

Stewart, P.J.


_____

Richman, J.


A166731, *People v. Morales*

19

Trial Court:  Superior Court of Sonoma County


Trial Judge:  Hon. Patrick Broderick


Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant


Rob Bonta, Attorney General; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Assistant Attorney General; Seth K. Schalit and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent


A166731, *People v. Morales*